UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

VELMA CARTER,

        Plaintiff,

vs.                              Case No.  3:05-cv-1268-J-25MCR

JO ANNE B. BARNHART, Commissioner of
the Social Security Administration,

        Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision

denying her application for Social Security benefits.  The Court has reviewed the record,

the briefs and the applicable law.  For the reasons set forth herein, it is recommended

the Commissioner's decision be **AFFIRMED**.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance

benefits ("DIB") on August 29, 1997.  (Tr. 109).   Plaintiff alleged an inability to work due

to musculoskeletal pain in her neck, left shoulder, and lower back, as well as anxiety

and depression.  (Tr. 121).  The Social Security Administration ("SSA") denied Plaintiff's

application initially and on reconsideration. (Tr. 88-89, 96-97).  Plaintiff then requested

and received a hearing, on March 9, 1999, before Administrative Law Judge ("ALJ")

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636 and Rule
6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days
after service of this document.  Failure to file timely objections shall bar the party from a de novo
determination by a district judge and from attacking factual findings on appeal.

John D. Thompson, Jr.  (Tr. 27-87).  On May 25, 1999, the ALJ issued a decision

finding Plaintiff not disabled.  (Tr. 11-22).  Plaintiff filed a Request for Review by the

Appeals Council and on April 28, 2000, the Appeals Council denied Plaintiff's request

for review, thus making the ALJ's May 25, 1999 decision the final decision of the

Commissioner.  (Tr. 5-6).

Plaintiff appealed and sought judicial review of the Commissioner's final decision.

Pursuant to the Commissioner's motion requesting remand (Tr. 383-84), this Court

remanded the case under sentence four of 42 U.S.C. § 405(g) for further proceedings.

(Tr. 380-82).  The ALJ held a supplemental hearing on July 10, 2002.  (Tr. 456-517).

On November 12, 2002, the ALJ again denied Plaintiff's claim for DIB, finding Plaintiff

not disabled.  (Tr. 364-78).  Plaintiff timely appealed by filing a Complaint with this Court

on December 14, 2005.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    <u>Basis of Claimed Disability</u>

Plaintiff claims to be disabled since June 1, 1993, due to musculoskeletal pain in

her neck, left shoulder, and lower back, as well as anxiety and depression.  (Tr. 121,

364).

### B.    <u>Summary of Evidence Before the ALJ</u>

Plaintiff was 50 years of age on the date her insured status expired.  (Tr. 462).

She has a ninth grade education with past relevant work experience as a daycare van

driver and a school bus driver.  (Tr. 463-68).  Plaintiff's medical history is summarized in

the ALJ's decision and therefore, will not be repeated in full here.  Because this case

was remanded for the ALJ to consider Plaintiff's mental limitations, the Court will limit its summary to the record evidence regarding Plaintiff's mental impairments.

By way of summary, the record indicates that on March 31, 1993, Plaintiff was seen at the Family Health Center of Columbia County, Inc. (the "Family Health Center") where she complained of severe PMS symptoms including mood swings, crying, and depression.  (Tr. 201).  Plaintiff returned to the Family Health Center on April 29, 2003, and again discussed her symptoms of depression with her doctor.  (Tr. 202).  On Plaintiff's June 2, 1993 visit to the Family Health Center, she complained she felt depressed and a progress note shows Plaintiff was advised to seek counseling.  Id.

On July 13, 1993, Plaintiff was seen by Jeffrey B. Klein, M.D., a neurologist, for her symptoms from an automobile accident including severe lower neck pain, shoulder, and back pain.  (Tr. 208).  Plaintiff told Dr. Klein she had crying spells, mood swings, nervousness, difficulty with memory problems, thinking clearly, fatigue, depression and anxiety.  Id.  Upon examination, Dr. Klein noted Plaintiff had a normal mental status with the exception of a flattened affect; however, his impression was that she suffered from post-traumatic mental status changes with depression, anxiety, and difficulty concentrating, suggesting a possible memory disturbance.   (Tr. 209).  His plan was to obtain a brain mapping to determine whether Plaintiff suffered from a head injury.  Id.

On September 9, 1993, Dr. Klein ruled out that Plaintiff suffered from a head injury.  (Tr. 207).  On January 6, 1994, and again on March 3, 1994, however, Dr. Klein noted his impression was that Plaintiff suffered from post-traumatic mental status changes with depression, anxiety, memory disturbance, and difficulty concentrating, suggesting a  possible mild head injury.  (Tr. 204-05).

3

On June 4, 1994, Plaintiff returned to the Family Health Center and discussed menopause with her physician.  (Tr. 201).  In July 1994, notes from the Family Health Center documented Plaintiff's mother had died of breast cancer the month before and Plaintiff continued to complain of depression.  (Tr. 200).  Her physician, Dung Le, M.D., prescribed Plaintiff Zoloft for her depression.  Id.  In September 1994, Plaintiff returned to Dr. Le still complaining of depression.  (Tr. 199).  She denied having suicidal thoughts but stated she cried and felt irritable for no reason.  Id.  Dr. Le increased Plaintiff's prescription for Zoloft from 100 to 150 mg per day with the potential to increase it to 200 mg.  (Tr. 198).

On October 19, 2004, Plaintiff told Dr. Le she had good and bad days; she was taking 150 mg of Zoloft.  Dr. Le opined Plaintiff was doing well overall.  (Tr. 197).  On February 24, 1995, a progress note from the Family Health Center indicated Zoloft was helping Plaintiff's mood swings, but that Plaintiff's depression seemed to be associated with her PMS.  (Tr. 195-96).  On May 5, 1995, however, Plaintiff requested medication for her mood swings because Zoloft was not providing her relief.  (Tr. 194).  She was on Zoloft for 2-3 months but noticed mood swings about ten days before her period and once her period started, her mood swings would go away.  Id.  Dr. Le prescribed 1mg of Ativan for Plaintiff's PMS.  Id.

Plaintiff continued to see Dr. Le, but nothing in the record suggested she complained of depression again until July 1996.  (Tr. 194-189).  In July 1996, Dr. Le noted he planned to conduct tests to determine if Plaintiff's depression and mood swings were related to her hormones.  (Tr. 189).  On October 7, 1996, Dr. Le noted he had recently started Plaintiff on estrogen replacement therapy, however, Plaintiff was

4

still experiencing mood swings, irritability and decreased libido. (Tr. 187).  Dr. Le

continued Plaintiff on estrogen replacement therapy and prescribed her 50mg of Zoloft.

Id.  Additionally, there is a note from Dr. Le stating he advised Plaintiff that his office

would not treat her anxiety and that if she was unhappy with Zoloft, she should make an

appointment to see a psychiatrist.  Id.

On December 12, 1996, the Office of Disability Determinations referred Plaintiff

to E. Jensen, Ph.D., a licensed psychologist.  Dr. Jensen found Plaintiff to be in severe

psychological distress as evidenced by her crying throughout his examination of her.

(Tr. 245).  Dr. Jensen further found Plaintiff's attention, concentration and short term

memory skills were severely impaired.  (Tr. 246).  Dr. Jensen reported Plaintiff stated

she had no thoughts of suicide, self injury, or violence to others.  (Tr. 247).  Dr. Jensen

diagnosed Plaintiff with panic disorder with agoraphobia, and adjustment disorder with

anxiety and depressed mood-chronic.  Id.

In June 1997, Plaintiff returned to see Dr. Le at the Family Health Center.  (Tr.

185).  Dr. Le noted Plaintiff's last menstruation was in December 1996 and prior to that

she had not had one for eight months.  Id.  Dr. Le noted Plaintiff complained of mood

swings and hot flashes and that another doctor had placed Plaintiff on an

antidepressant the prior week.[2]  Id.

Beginning in September 1997, Plaintiff was treated by Joseph Czerkawski, M.D.

for her neck, left shoulder, and back pain.  (Tr. 254),  He diagnosed Plaintiff with mild

---

[2] The note from Dr. Le appears to state that Dr. Alexander prescribed Plaintiff an antidepressant the week prior; however, the Court has been unable to locate any medical records from Dr. Alexander in the evidentiary records.

degenerative disease and a post traumatic myofascial pain syndrome with some associated lumbar and cervical strain.  Id.  He administered trigger point injections and prescribed physical therapy, massage, and a walking program.  (Tr. 253).

On November 26, 1997, the Office of Disability Determination asked Dr. Czerkawski, one of Plaintiff's treating physicians, various questions regarding Plaintiff's mental impairments.  Dr. Czerkawski responded he did not believe Plaintiff suffered from a separate and discreet mental impairment which significantly interfered with her daily functioning.  (Tr. 249).  Further, Dr. Czerkawski stated he did not refer Plaintiff to anyone for psychiatric or psychological treatment and that he had not prescribed any medication for Plaintiff's mental condition.  Id.

On January 19, 1998, a state agency psychological consultant, Jane F. Cormier, Ph.D., completed a psychiatric review technique form on Plaintiff in which she opined Plaintiff's mental impairments were not severe.  (Tr. (Tr. 257).256-64).  Dr. Cormier found Plaintiff suffered from affective disorder and panic disorder with agoraphobia. (Tr. 256, 259-60).  Dr. Cormier further opined Plaintiff had no limitations on daily living activities; nor did Plaintiff have any episodes of deterioration or decompensation in work or work-like settings. (Tr. 263).  Dr. Cormier noted slight limitations in Plaintiff's ability to maintain social functioning and further noted Plaintiff seldom had deficiencies in her ability to concentrate, persistence or pace.  Id.

On May 26, 1998, Plaintiff was examined by Robert B. David, Ph.D., pursuant to a referral from the Office of Disability Determinations.  (Tr. 273-75).  Dr. David noted Plaintiff reported she suffered from anxiety attacks approximately three times a month, which could last up to forty-five minutes.  (Tr. 273).  Dr. David further noted Plaintiff was

6

taking Buspar and Atarax for her anxiety, but that she had never received any other type of mental health treatment.  (Tr. 273-74).  Dr. David diagnosed Plaintiff with panic disorder, without agoraphobia and mood disorder due to chronic pain, with depressive features.  (Tr. 275).  Finally, Dr. David noted that in his opinion Plaintiff's "psychological disorders contribute to her current apparent inability to maintain gainful employment." Id.

On June 24, 1998, a second state agency psychological consultant, Patrick Peterson, Ph.D., evaluated Plaintiff and also determined her mental impairments were not severe.  (Tr. 295).  Dr. Peterson diagnosed Plaintiff as suffering from an affective disorder characterized by an adjustment reaction with mixed emotional features, as well as an anxiety related disorder.  (Tr. 298-99).  In evaluating Plaintiff's impairment severity, Dr. Peterson found Plaintiff had no limitations in activities of her daily living or in maintaining social functioning.  (Tr. 302).  He further found Plaintiff was seldom limited in her ability to concentrate and she had never displayed episodes of decompensation in a work or work-like setting.  Id.

Finally, on April 1, 2002, after the ALJ's initial decision and three months prior to Plaintiff's supplemental hearing, Dr. David filled out a mental residual functional capacity assessment form provided to him by Plaintiff's counsel.  (Tr. 370, 450).  The form showed Dr. David had examined Plaintiff in May 1998 and asked Dr. David to describe, by checking pre-defined terms, Plaintiff's level of restrictions on various areas of her life. (Tr. 450).  Dr. David found Plaintiff was seriously limited or very seriously limited in a variety of tasks related to concentration, social interaction, and adaptation.  (Tr. 450-52).

C.      **Summary of the ALJ's Decision**

Plaintiff is entitled to disability benefits if she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if Plaintiff is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b).  Second, if Plaintiff does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c).  Third, if Plaintiff's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if Plaintiff's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if Plaintiff's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits through March 31, 1999.  (Tr. 365). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability.  (Tr. 365, 375).  At step two, the ALJ found

Plaintiff has "a soft tissue injury to her neck, left shoulder and lower back and related pain, an anxiety disorder and a history of panic attacks and glaucoma with mild reduction in her visual acuity, impairments which cause significant vocationally relevant limitations."  (Tr. 365, 375).  The ALJ, in step 3,  found Plaintiff's impairments did not meet the criteria of any of the listed impairments described in Appendix 1, Subpart P of the Regulations No. 4.  (Tr. 365, 375).

In determining Plaintiff's residual functional capacity ("RFC"), the ALJ opined Plaintiff retained the ability to:

> perform the exertional demands of a slightly reduced range of light or sedentary work, or work which requires maximum lifting of twenty pounds and frequent lifting of ten pounds or less . . . . The evidence supports a finding that she was able to lift and carry up to twenty pounds occasionally and ten pounds or less on a more frequent basis.  She can sit, stand, or walk for at least 6 hours in a normal work day which are necessary to perform both light and sedentary work. . . .
>
> [Plaintiff's] capacity for light to sedentary work is diminished by other significant non-exertional limitations but they would not have prevented her ability to concentrate on and attend to work tasks on a sustained basis, maintain adequate work attendance, interact appropriately with co-workers and supervisors, and perform tasks requiring normal intelligence. She is limited to working in a work environment which does not expose her to work at unprotected heights or around dangerous moving machinery, work requiring acute bilateral vision, work requiring more than occasional bending, stooping, crouching, crawling, kneeling and climbing and no more than occasional use of either shoulder to reach overhead.

(Tr. 372-73).   In considering all of the relevant evidence, the ALJ found Plaintiff's testimony regarding her pain, anxiety, depression and resulting limitations not fully credible.  (Tr. 370).

At step four, the ALJ utilized the testimony of a Vocational Expert ("VE") to determine if Plaintiff retained the RFC to perform any of her past work.  (Tr. 373).  As Plaintiff's past work as a bus or van driver consisted of medium level exertional tasks, the ALJ found Plaintiff was not capable of returning to her past work.  (Tr. 373).

In step five, the ALJ asked the VE whether jobs existed in the national economy for an individual with Plaintiff's age, education, work limitations, past relevant work experience and residual functional capacity as determined.  (Tr. 374).  The VE responded Plaintiff could work in the following six jobs: (1) a surveillance system monitor (2,000 state positions and 40,000 national jobs); (2) an order clerk, food and beverage (2,500 state positions and 75,000 national jobs); (3) a gate guard (4,000 state positions and 125,000 national jobs); (4) a silver wrapper (1,200 state positions and 55,000 national jobs); (5) a deliverer (1,200 state positions and 30,000 national jobs economy); and (6) an information aide (3,000 state positions and 70,000 national jobs. (Tr. 374).   The ALJ then asked the VE whether Plaintiff could work at each of these jobs even if she suffered from at least three random "panic attacks" lasting 15-30 minutes in addition to the above noted restrictions.  The VE opined even with the panic attacks, Plaintiff could perform the above referenced jobs.  (Tr. 374).

The ALJ then presented a second hypothetical to the VE.  He asked the VE to consider all of the limitations in his first hypothetical, in addition to mild limitations in the ability to: perform tasks; understand, remember, and carry out simple instructions; maintain social [interaction], traveling or use [of] public transportation; and in the ability to make simple work related decisions and ask simple questions.  (Tr. 507).  In response, the VE opined Plaintiff was capable of performing all of the jobs mentioned

10

above, except for the deliverer position.  (Tr. 508).  Accordingly, at step five, the ALJ

determined that based on Plaintiff's age, educational background, work experience,

work limitations, and residual functional capacity, Plaintiff "retained the capacity to make

an adjustment to work which existed in significant numbers in the national economy."

(Tr. 374).  Therefore, the ALJ found Plaintiff was not disabled within the meaning of the

Social Security Act.  (Tr. 374-76).

## III.    STANDARDS OF LAW

### A.    The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ

applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir.

1988), and whether the findings are supported by substantial evidence.  Richardson v.

Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact

are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial

evidence is more than a scintilla – i.e., the evidence must do more than merely create a

suspicion of the existence of a fact, and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion.  Foote v.

Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835,

838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991);

Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view

the evidence as a whole, taking into account evidence favorable as well as unfavorable

to the decision.  <u>Foote</u>, 67 F.3d at 1560; <u>accord</u>, <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837

(11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of

factual findings).

## IV.   ANALYSIS

Following an unfavorable decision by the Commissioner and an order by the

Appeals Council affirming such decision, Plaintiff filed a complaint with this Court

seeking further review of the Commissioner's decision.  Upon a voluntary motion for

remand by the Defendant, the Court remanded this matter and instructed the ALJ to:

> discuss, assign weight to, and reject or accept Dr. David's opinion that
> Plaintiff has mental functional limitations, including recontacting Dr. David
> regarding the extent of the limitations if necessary; if the opinion is
> rejected, provide adequate reasons, and if it is accepted, include any
> limitations in a new residual functional capacity determination, and include
> the limitations in a hypothetical question to a Vocational Expert; further
> develop the record generally regarding Plaintiff's treatment of anxiety and
> depression, specifically her inability to afford treatment and prescribed
> medication from Dr. Czerkawski, and address the issues in the decision,
> particularly in the credibility determination; and any other proceedings the
> Commissioner deems appropriate.

(Tr. 380).  On July 19, 2002, the ALJ conducted a supplemental hearing on this matter.

Following the hearing, the ALJ again issued a decision finding Plaintiff not disabled.  (Tr.

364-77).

Plaintiff asserts one main issue on appeal -- whether the ALJ was in direct

violation of this Court's remand Order dated May 31, 2001.  Plaintiff makes two

arguments in support of her position.  First, she asserts the ALJ erred in not giving

proper weight to Plaintiff's treating physicians' opinions.  Specifically, Plaintiff argues the

ALJ erred by failing to re-contact Dr. David regarding Plaintiff's mental health limitations

12

and by not discussing, assigning weight to, and accepting or rejecting Dr. Jensen's

opinions.  Id. at 5-6.  Second, Plaintiff claims the ALJ violated the remand order by not

asking a proper hypothetical question which reflected Plaintiff's mental health

restrictions.  (Doc. 9, p. 1).

    The Commissioner responds the ALJ was not required by this Court's Order to

re-contact Dr. David, nor was he required to discuss Dr. Jensen's opinion or any of

Plaintiff's treating physicians' opinions.   Id. at 7-8.  Moreover, the Commissioner argues

the decision of the ALJ is based on substantial evidence because the ALJ included all

Plaintiff's impairments in the hypotheticals he presented to the VE.  (Doc. 12, p. 9).

Specifically, the Commissioner argues the hypotheticals the ALJ posed to the VE

properly incorporated, as documented in the record, Plaintiff's functional limitations

which stem from her mental impairments.  Id.

    **A.**    **Whether the ALJ erred in not giving proper weight to Plaintiff's treating physicians' opinions.**

    Plaintiff argues the ALJ erred by failing to give proper consideration to the

treating physicians' opinions.  (Doc. 9, p. 6).  Specifically, Plaintiff states the ALJ

violated the remand order by failing to re-contact Dr. David in an effort to clarify the

functional limitations he placed on Plaintiff.  Id.  Further, Plaintiff argues the ALJ did not

discuss, assign weight to, or accept or reject Dr. Jensen's opinion with the exception of

rejecting Dr. Jensen's opinion that Plaintiff was agoraphobic.  Id. at 7.

    The Commissioner responds that Plaintiff misinterprets the remand order.  (Doc.

12, p. 6).  The Commissioner correctly points out the ALJ was not required to re-contact

Dr. David.  Rather, upon remand, the ALJ was asked, *inter alia*, "to discuss, assign

weight to, and reject or accept Dr. David's opinion that Plaintiff has mental functional limitations, *including recontacting Dr. David regarding the extent of the limitations if necessary. . . .*"  (Tr. 380) (emphasis added).  The ALJ did just what was required of him upon remand.

Importantly, the ALJ discussed Dr. David's opinion and stated he gave little weight to such opinion.  The ALJ cited the following six factors as his reasoning for affording Dr. David's opinion little weight: (1) Dr. David saw Plaintiff only on one occasion; (2) Plaintiff gave Dr. David information which was inconsistent with her account of her mental state which she relayed to other physicians; (3) Plaintiff failed to disclose that she had previously been informed her depressive symptoms were connected to hormonal problems; (4) Dr. David did not have access to Plaintiff's medical records which included documentation on her depression and anxiety; (5) Plaintiff's complaints of unbearable pain were not substantiated by the record and thus, Dr. David's opinion that Plaintiff had a mood disorder related to her chronic pain should be discounted; and (6) there was no evidence that Plaintiff's panic attacks occur frequently or are debilitating to the point that Plaintiff requires formal mental health treatment.   (Tr. 369).

Although Plaintiff only makes the argument the ALJ erred by not re-contacting Dr. David, the Court finds it incumbent to note the ALJ's reasoning is supported by substantial evidence.  There is support in the record for the reasons set forth above by the ALJ.  Namely, it is true that Dr. David only examined Plaintiff on one occasion and thus, he was not a treating physician.  The ALJ was not obligated to give Dr. David's position controlling weight.  Moreover, nothing in Dr. David's report indicated he was

aware of Plaintiff's previous history with depression.  It did not appear Dr. David was afforded all of Plaintiff's past medical records related to her anxiety and depression and specifically, it did not appear Dr. David was aware that Plaintiff noticed a correlation between her mood swings/depression and her menstrual cycle or that at least of Plaintiff's treating physicians had associated Plaintiff's depression with hormonal changes related to menopause.

While the Court may not have come to the same conclusion as the ALJ, the Court cannot hold the ALJ erred in giving little weight to Dr. David's opinion.  In fact, two state psychologists independently prepared a mental residual functional capacity evaluation in January 1998 and June 1998 and both opined Plaintiff's mental impairments were not severe.

As stated above, the Commissioner is also correct that the district court's instructions upon remand did not require the ALJ to re-contact Dr. David.  The ALJ explained that he decided not to re-contact Dr. David because it would not "serve any useful purpose" since Plaintiff's insured status expired in March 1999 and it had been four years since Dr. David examined Plaintiff.  (Tr. 369-70).  Dr. David only examined Plaintiff on one occasion and there was nothing in either Dr. David's May 1998 report or the report submitted just prior to the supplemental hearing (the mental residual functional capacity assessment provided by Plaintiff's counsel) which indicated Dr. David would have an independent recollection of Plaintiff and her mental state, as it existed before March 1999.  The ALJ's reasons for not re-contacting Dr. David are sufficient.

Plaintiff next argues the ALJ did not discuss, assign weight to, or accept or reject

15

Dr. Jensen's opinions with the exception of mentioning Plaintiff was not agoraphobic contrary to Dr. Jensen's assessment.  (Doc. 9, pp. 6-7).  Notably, the remand order did not require the ALJ to conduct an independent analysis of Dr. Jensen's opinion.  The ALJ did, however, compare the differences between Dr. Jensen's medical report and various other medical reports for the purpose of showing the inconsistencies in Plaintiff's account of her mental state and her daily activities.  Essentially, the ALJ found Plaintiff's description of her capabilities and mental state vacillated from physician to physician and during her hearing testimony; thus, the ALJ determined Plaintiff lacked credibility.  While noting Plaintiff had some functional limitations, the ALJ found Dr. Jensen's opinion that Plaintiff was agoraphobic was not substantiated by the evidence.  Thus, the ALJ placed little weight on Dr. Jensen's opinion.

The ALJ conducted a detailed analysis of Plaintiff's mental condition in the supplemental hearing as well as in his written decision.  Notably, it is Plaintiff's burden to offer evidence that she is disabled; Plaintiff did not meet her burden.  Plaintiff never sought treatment for her anxiety or depression.  Moreover, Plaintiff testified she did not regularly take medications prescribed for her depression or anxiety.  Despite Plaintiff's claims she could not afford various medications, the ALJ noted Plaintiff had received vouchers for Zoloft prescribed by Dr. Lee and further noted that Plaintiff had routinely sought treatment for a variety of different medical problems, but never sought treatment from a psychologist or psychiatrist.  Moreover, two psychologists and at least one of Plaintiff's treating physicians opined Plaintiff's mental impairments were not severe.  Thus, the ALJ's analysis regarding the extent of Plaintiff's mental impairments was supported by substantial evidence.

16

**B.** **Whether the ALJ erred by not asking the VE a hypothetical question which incorporated Plaintiff's mental health restrictions.**

Plaintiff argues the ALJ erred in assessing Plaintiff's mental health impairments and thus, the ALJ's hypothetical to the Vocational Expert (VE) was improper.  (Doc. 9, p. 16).  Plaintiff contends that because the ALJ found Plaintiff's mental health impairments were severe, it was error for the ALJ to pose a hypothetical question which indicated Plaintiff only had mild limitations.  Id.  The Commissioner replies the ALJ properly incorporated Plaintiff's functional limitations documented in the record as arising from Plaintiff's mental impairments into the hypothetical questions.  (Doc. 12, p. 9).

Importantly, the Court notes the ALJ found Plaintiff's anxiety disorder and history of panic attacks were the only severe mental impairments from which Plaintiff suffered. Additionally, although the ALJ found Plaintiff suffered from other "significant non-exertional limitations," he found "they would not have prevented her ability to concentrate on and attend to work tasks on a sustained basis, maintain adequate work attendance, interact appropriately with co-workers and supervisors, and perform tasks requiring normal intelligence." (Tr. 373).   During the hearing, the ALJ posed two hypothetical questions to the VE which incorporated all of his findings.

In the first hypothetical he asked the VE to consider the fact that Plaintiff would experience approximately three random anxiety attacks in a month which would last between 15 and 30 minute and which would require Plaintiff to sit down and rest.  (Tr. 504).  The VE then questioned the ALJ about the nature of the anxiety attacks and the ALJ made it clear that the panic attacks were unpredictable and that Plaintiff would be

forced to discontinue her work when one occurred.  (Tr. 505).  The VE opined even with the panic attacks, Plaintiff could work and he listed several examples of positions in which Plaintiff was capable of working.  The positions included a surveillance system monitor, an order clerk -- food and beverage, a gate guard, a referral and information aide, a silver wrapper, and a deliverer.  (Tr. 506-07).

The ALJ then posed a second hypothetical in which he incorporated all of the limitations from his first hypothetical and additionally asked the VE to assume Plaintiff had mild limitations in her ability to understand and remember very short and simple instructions, in her ability to carry out very short and simple instructions, in her ability to function socially, travel, and use public transportation, and in her ability to make simple work related decisions and ask simple questions.  (Tr. 507).   The VE then stated that under the ALJ's second hypothetical, the Plaintiff could do any of the following jobs set forth above with the exception of the deliverer.

 The Court notes that "[i]n order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing, McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987)).  At step 2 of the disability analysis, the ALJ determined Plaintiff's anxiety disorder and history of panic attacks were severe impairments.  Other than Plaintiff's panic attacks, the ALJ found Plaintiff's mental impairments would not substantially impede her ability to work.  The ALJ asked the VE to consider Plaintiff's panic attacks, which could occur up to three times a month, when considering Plaintiff's vocational abilities.   Moreover, the ALJ questioned the VE regarding Plaintiff's mild limitations in concentration, and in her ability to understand and

remember very short and simple instructions, in her ability to carry out very short and simple instructions, in her ability to function socially, travel, and use public transportation, and in her ability to make simple work related decisions and ask simple questions.   Accordingly, the ALJ did indeed take Plaintiff's mental problems into consideration in presenting his hypothetical to the VE.

## V.    CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is supported by substantial evidence and is based upon the proper legal standards.

Accordingly, after due consideration, it is hereby

**RECOMMENDED**:

The Commissioner's decision be **AFFIRMED**.

**DONE AND ENTERED** at Jacksonville, Florida, this __13th__ day of December, 2006.

_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Honorable Henry Lee Adams
District Court Judge